UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 08-11487-RWZ

ISRAEL ROSA

v.

THOMAS DICKHAUT

MEMORANDUM OF DECISION

July 16, 2010

ZOBEL, D.J.

Petitioner Israel Rosa ("Rosa"), a state prisoner, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his state court conviction for home invasion, armed burglary, and assault by means of a dangerous weapon.

In 2004, petitioner was tried before a jury, convicted, and sentenced to a term of 12 to 15 years imprisonment. He now claims that in violation of his Sixth Amendment right, he did not receive effective assistance of counsel in that his counsel failed to (1) file a motion to suppress out-of-court identifications from an allegedly suggestive photo array; and (2) object to in-court identifications which were tainted by the suggestive photo array.

For the reasons discussed below, the petition (Docket # 1) is denied.

I.      **Factual and Procedural Background**

   A.      **The Home Invasion**

On July 30, 2004, in Springfield, Massachusetts, at approximately 12:00 a.m.,

two intruders entered a home at 20 Calhoun Street. It was inhabited by several migrant farm workers, including Israel Masariegos, Angelica Lopez, Pablo Villatoro, Jose Gonzalo and Luis Ulbert. Masariegos testified that he awoke to find two men in his room, one of whom pointed a gun at him and demanded money; the other intruder rifled through Masariegos' possessions. He further stated that a struggle ensued between himself and the armed man during which he knocked the gun to the floor. The man then grabbed the gun and ran out of the house. Masariegos and two housemates, Gonzalo and Ulbert, surrounded the remaining intruder, took hold of him, and brought him downstairs, where they detained him. They then called the police.

This did not end the encounter, however. In an unusual turn of events, a crowd gathered outside the house and demanded the release of the detained man. The crowd began to hurl rocks and damage the property. The residents yielded to this barrage and, after detaining the intruder for 10-30 minutes, they released him before the police arrived.

### B.   The Identifications

When the police arrived on the scene, Masariegos, Lopez, and Villatoro explained that they had never seen the intruders before. None provided a meaningful description of the intruder they had collectively detained.[1] After the police left, the three discussed the intruder's appearance amongst themselves. Seven days later, each witness went to the police station, viewed a photo array, and identified the

---

[1] One resident, Pablo Villatoro, did give a brief and general description to the police on the night of the incident. He described one man as "big" and the other man as "small."

petitioner as the perpetrator.

The police used the following procedure during the identification: each witness was separately shown a photo array of 16 photos evenly distributed in groups of four on four separate pages. Before viewing the photos, each witness was told that he would be shown pictures of individuals and that he should view the pictures and identify the intruder if he could, but if not, the case would nonetheless be fully investigated. Villatoro and Masariegos identified Rosa after viewing the entire array. Lopez identified Rosa after viewing 12 of the 16 photos.

During the trial, all three of the witnesses separately identified petitioner as the man they detained in their house on the night of the incident.

### C.   Trial, Conviction, and Post-Trial Motions

Rosa was charged with three offenses: (1) home invasion in violation of Mass. Gen. Laws ch. 265, § 18c; (2) armed burglary in violation of Mass. Gen. Laws ch. 266, § 14; and (3) armed burglary in violation of Mass. Gen. Laws ch. 265, § 15B(b). He was tried to a jury and on May 19, 2005, convicted on all three charges.

#### 1.   The Commonwealth's Case

The Commonwealth's case was based solely on the testimony of the three residents of 20 Calhoun Street. No fingerprints or bullets were retrieved from the scene, and no physical evidence was introduced.

#### 2.   The Defendant's Case

In his defense, defendant presented several friends and family members, each of whom testified that he spent the day with his family at his aunt's house and at a

parade and festival. Defendant's mother testified that she locked the door to the house at 11:30 pm and observed defendant sleeping when she woke at 9:00 am. Defendant did not take the stand.

The Commonwealth called a rebuttal witness, Detective Edward Sierra, who testified that because of the proximity between petitioner's aunt's residence and 20 Calhoun Street, petitioner could easily have walked the short distance around 12:00 am on the night of the incident.

### 3.   Post-Trial Motions

On May 12, 2006, Rosa filed a motion for a new trial, which was denied on September 26, 2006. He also filed a direct appeal of his conviction, which was later consolidated with the appeal from the denial of his motion for a new trial. In an order dated October 22, 2007, the appeals court denied Rosa's direct appeal and affirmed the denial of his motion for a new trial. See Commonwealth v. Rosa, No. 06-P-280, 70 Mass. App. Ct. 1106, 2007 WL 3071544 (Mass. App. Ct. Oct. 22, 2007). The Supreme Judicial Court ("SJC"), on November 29, 2007, denied his application for further appellate review.

On August 19, 2008, petitioner filed the instant habeas petition (Docket # 1). Respondent opposes the petition (Docket # 17).

## II.   Legal Analysis

### A.   Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") permits habeas relief only if the state court proceeding "(1) resulted in a decision that was contrary to,

or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in the light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). The parties agree that petitioner's claims were adjudicated on the merits by the state courts and therefore should be reviewed with AEDPA deference.

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams v. Taylor, 529 U.S. 362, 413 (2000). An erroneous or incorrect application is not necessarily an unreasonable one (id. at 411), and "if it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application." McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002). However, "the state court decision may be unreasonable if it is devoid of record support for its conclusions or is arbitrary." Id. at 37.

Under the "unreasonable determination of the facts" clause, "federal habeas courts must make as the starting point of their analysis the state courts' determinations of fact." Williams, 529 U.S. at 385. "The question ... is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007).

**B.    Ineffective Assistance of Counsel Standard**

Claims that a petitioner was denied his Sixth Amendment right to effective assistance of counsel are governed by the Supreme Court's holding in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  To prevail on such a claim, a petitioner must satisfy a two-part test: he must demonstrate (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that the deficient performance of counsel prejudiced the defense.  See <u>Strickland</u>, 466 U.S. at 687-88.

In determining whether counsel's representation fell below an objective standard of reasonableness, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." <u>Strickland</u>, 466 U.S. at 689.

Under the prejudice prong of the <u>Strickland</u> test, petitioner must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694.

### C.     State Court's Decision

In his motion for a new trial, petitioner contended that the identifications based on the photo array displayed to the witnesses seven days after the incident were unreliable because (1) petitioner was the only person in the photo array with facial acne and a dark blue cast on his picture; and (2) the identifications were made a long time after the incident; (3) the witnesses rendered no (or no meaningful) description to police prior to being shown the photos; (4) the witnesses discussed the detained man's

appearance with one another after the police had left; and (5) the witnesses got a look at the detained man for only a short time during the incident while they were under stress. In addition, during the showing, police told one witness (Lopez) that she had correctly identified the suspect before she had seen the entire array and then failed to show her the four remaining photos.

Petitioner contended that his counsel's representation was constitutionally defective because counsel failed to (1) file a motion to suppress the out-of-court identifications from the photo array; and (2) object to in-court identifications which were tainted by the suggestive photo array.

The appeals court affirmed both the conviction and the trial judge's decision denying petitioner's motion for a new trial. It concluded that "a motion to suppress the photographic array would not have succeeded because the array was not suggestive" and ruled that "there was not error in the in-court identifications." Commonwealth v. Rosa, 2007 WL 3071544, at *2.

For the reasons discussed below, this court concludes that the state courts did not unreasonably apply federal law in reaching their decision and therefore denying petitioner's claim. Nor was their decision based on an unreasonable determination of the facts.

### D.   Application of Strickland Standard to Petitioner's Claim

Failure to file a motion to suppress does not constitute ineffective assistance of counsel when filing such motion has a minimal chance of success. See United States

v. Pellerito, 968 F.2d 1210, 1992 WL 165630, *3 (1st Cir. 1992) (refusing to fault counsel's failure to file motion to suppress in absence of "showing that any valid ground of suppression was available"). Accordingly, I first turn to a determination of the merits of a putative suppression motion.

### 1. Failure to Move to Suppress Out-of-Court Photo Array Identifications

A pretrial photographic identification procedure used by law enforcement officials violates due process if the procedure is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384 (1968).

Courts have delineated a two-part test for the exclusion of identifications based upon unduly suggestive photo arrays. First, the court must determine if the identification procedure employed was impermissibly suggestive. See United States v. Henderson, 320 F.3d 92, 100 (1st Cir. 2003). Second, if it finds that it was, the court must address whether "the identification itself was reliable under the totality of the circumstances, notwithstanding the suggestive procedure." Id. (citation omitted).

The Court in Neil v. Biggers, 409 U.S. 188, 199 (1972), enumerated five factors used to evaluate reliability independent of the unduly suggestive identification procedures: (1) "the opportunity of the witness to view the criminal at the time of the crime;" (2) "the witness' degree of attention;" (3) "the accuracy of the witness' prior description of the defendant;" (4) "the level of certainty demonstrated by the witness at the confrontation;" and (5) "the length of time between the crime and the confrontation."

Id. at 199.

Here, petitioner contends the photo arrays were unduly suggestive on a number of separate grounds. First, he contends that his photo was impermissibly distinct because he was the only person in the photo array with facial acne, a dark blue cast on his picture, and a gray shirt while 14 of the other men pictured wore white shirts. Differences among the physical characteristics of individuals in a photo array may be impermissible. See, e.g., Commonwealth v. Gordon, 6 Mass. App. Ct. 230, 239 (1978) (photo array unnecessarily suggestive where defendant was the only individual pictured with braided hair). However, not all differences between the defendant's appearance and those of the other individual depicted in a photo array necessarily render the array impermissibly suggestive. See, e.g., United States v. Funches, 84 F.3d 249, 253 (7th Cir.1996) (photo array not unduly suggestive where defendant objected that he was shorter and skinnier than the other participants, and was the only suspect wearing a green t-shirt, and who was of slight build and dark complexion). In general, differences among the physical characteristics of individuals in a photo array are constitutionally permissible, provided that they are not significant enough to "suggest to an identifying witness that [the defendant] was more likely to be the culprit." See United States v. Bautista, 23 F.3d 726, 731 (2d Cir. 1994). Here, the appeals court found that there was no evidence that the witnesses relied on the facial acne to identify petitioner, nor that the gray shirt figured prominently in the witnesses' descriptions, nor that the witness relied on the clothing to identify the suspect in the lineup. It further referenced the trial judge finding that the facial acne was very light

9

and petitioner's photo was not the only one with the blueish tint on the photo.

Petitioner next contends the identifications were made one week after the incident and are thus of limited reliability. While length of time after the incident is a factor to be considered in determining reliability, seven days is not impermissibly long. See Mikel v. Thieret, 887 F.2d 733, 739 (7th Cir. 1989) (11 days between date of incident and date of photo array identification not impermissibly long).

Petitioner is correct in his contention that the witnesses rendered no (or no meaningful) description prior to being shown the photos. However, this does not render the identifications unreliable. If anything, the photo array is more reliable as a result, since the officers could not select photos to match an extant description. See, e.g., United States v. Thai, 29 F.3d 785, 808 (2d Cir. 1994) (holding that a photo array is improperly suggestive if "the picture of the accused, matching descriptions given by the witness, so stood out from all of the other photographs as to suggest to an identifying witness that [that person] was more likely to be the culprit."). Moreover, the record does not reflect that the housemates were unable to give a description, simply that they did not do so.

Petitioner's objection that the witnesses discussed the detained man's appearance with one another after the police had left similarly does not taint the identifications. They separately selected the same individual. There is no evidence the witnesses discussed the results of the photo array with one another. Given that the individuals depicted in the photo arrays were all roughly the same age, and had

substantially similar features, including similar facial hair style and hair color, and eye color, the court cannot conclude that a general discussion prior to participating in the photo array selection renders the identifications invalid.

Petitioner next contends that the witnesses only got a look at the detained man for a short time during the incident while they were under stress. This argument is unavailing. While the housemates were under stress, the appeals court reasonably concluded that they detained the intruder for approximately 10-30 minutes. His face was not covered by a mask, the house was well lit, and the housemates were in close proximity to him. This is more than sufficient time for observation.

Finally, petitioner objects that during her photo array viewing, police told one witness (Lopez) that she had correctly identified the suspect and failed to show her the remaining photos in the array. There is no evidence, however, that Lopez told the other witnesses that she was told she had chosen the "correct" suspect. Moreover, once she correctly identified the suspect after viewing 12 photos, she was not shown the last group of four. Courts have held that single photo identifications are constitutionally infirm. See Nassar v. Vinzant, 519 F.2d 798, 801 (1st Cir. 1975). However, as the appellate court stated, the number of photographs shown here was "sufficiently large and varied" and there is no particular requirement that viewing an array containing 12 photos is insufficient. Comm. v. Rosa, 2007 WL 3071544, *3 (Oct. 22, 2007).

    **2.**    **The In-Court Identifications**

Whether a pretrial identification procedure is unduly suggestive is an inquiry separate and distinct from the question whether a subsequent in-court identification is nonetheless reliable. The Supreme Court has recognized the "danger that a witness seeing a suggestively displayed picture will retain in his memory the image of the photograph rather than of the person actually seen." Manson v. Brathwaite, 432 U.S. 98, 133 (1977). However, a subsequent in-court identification is inadmissible only if there is a "very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384 (1968).

Here, the appeals court first concluded that the out-of-court identification procedure used by police was not unduly suggestive. It next found that the in-court identifications were based on an independent source, namely, the witnesses' lengthy opportunity to view the intruder. That decision was not based on either an unreasonable application of clearly established federal law nor an unreasonable determination of the facts.

### E. State Court's Application of the Law

In rejecting petitioner's motion for a new trial, the trial judge concluded that petitioner had failed to meet his burden of demonstrating by a preponderance of the evidence that the identification procedures and photo array were unduly suggestive. She further found that a suppression motion would have had "little — if any — chance of success," and therefore "trial counsel's failure to file the motion was not ineffective." (Docket # 13, Commonwealth v. Rosa, Crim. No. 2004-01258 (Sept. 26, 2006) at

0070.)  The Massachusetts Appeals Court affirmed based on Commonwealth v. Cutts, 444 Mass. 821, 830, 831 N.E.2d 1279 (2005), which in turn relies upon Commonwealth v. Saferian, 366 Mass. 89, 99 (1974).  See Commonwealth v. Rosa, 2007 WL 3071544, at *1.  The court held in Saferian that when a claim of ineffective assistance of counsel is predicated upon counsel's failure to move to suppress, the claimant must demonstrate that the motion would have been granted and that there was reasonable possibility that the verdict would have been different if the motion had been granted. See Saferian, 366 Mass. at 99.  That standard is substantially the same as the federal legal principles set forth in Strickland.  See Smiley v. Maloney, 422 F.3d 17 (1st Cir. 2005).  I conclude, therefore, that the state court reasonably applied the legal principles of Strickland to the facts of Rosa's case, and that its decision conforms with federal law and is based on a reasonable determination of the facts.

### III.     Conclusion

The application for writ of habeas corpus (Docket # 1) is DENIED.


|  July 16, 2010  | /s/Rya W. Zobel |
|---|---|
| DATE | RYA W. ZOBEL |
|  | UNITED STATES DISTRICT JUDGE |